UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

JUSTINA KALAJ and ANNA KALAJ,

               Plaintiffs,         **MEMORANDUM & ORDER**
                                  21-CV-4395(EK)(JRC)

          -against-

JOYCE P. KAY, EUNICE TOH-KAY, GLENN
KAY, and JPKJJ HOLDINGS INC.,

               Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

      Justina Kalaj and Anna Kalaj brought this action

against Joyce P. Kay, Eunice Toh-Kay, Glenn Kay,[1] and JPKJJ

Holdings Inc.  The plaintiffs allege that the defendants wronged

them in two primary ways: first, Eunice and Joyce induced

Justina to consult for the defendants' swimsuit merchandise

venture but never compensated her.  Second, the plaintiffs

allege that all defendants schemed to "lure" them to invest in

the defendants' personal protective equipment (PPE) venture, but

then "purloined" that capital for their own "personal benefit

and financial gain."

      Both plaintiffs sued for breach of contract,

conversion, fraud, fraudulent inducement, unjust enrichment, and

violation of Section 349 of New York's General Business Law.

---

[1] For clarity, this Order will refer to Justina Kalaj, Anna Kalaj, Joyce
P. Kay, Eunice Toh-Kay, and Glenn Kay by their first names.

In response, Joyce and Glenn have now moved to dismiss for lack of personal jurisdiction, and all defendants have moved to dismiss for failure to state a claim.

For the following reasons, the motion to dismiss for lack of personal jurisdiction is denied, and the motion to dismiss for failure to state a claim is granted.

## I.   Background

The following recitation is taken from the Amended Complaint and from a subsequent declaration from Justina Kalaj.[2]

## A.   The Swimwear Venture

From "the end of 2018 to the beginning of 2019," *id.* ¶ 8, the defendants "enticed" Justina into providing consulting services to support their launch of a swimwear line.  *Id.* ¶¶ 8-9.  Anna Kalaj was not involved in the swimwear venture.  Thanks to Justina's consulting, Eunice, Glenn and Joyce profited, shipping swimsuit merchandise "all over the world."  Justina Decl. ¶¶ 8-9.  Although Eunice and Glenn "repeatedly promis[ed]"

---

[2] The plaintiffs attached a declaration from Justina to their opposition brief, Decl. of Justina Kalaj ("Justina Decl."), ECF No. 28-1, and "respectfully request[ed]" that it "be made part of the complaint."  Pls.' Mem. Opp. Mot. Dismiss ("Pls.' Mem.") 1 n.2, ECF No. 28.  The plaintiffs later submitted a letter "respectfully request[ing] that the Court accept [Justina's] Declaration as part of a Second Amended Complaint."  Pls.' Letter 1, ECF No. 36.  To "save time and a needless waste of resources," I will "deem the pleadings amended to incorporate the allegations . . . contained in the [Justina] Declaration." *New York v. Shore Realty Corp.*, 648 F. Supp. 255, 262 (E.D.N.Y. 1986).

Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

Justina that she would receive "approximately $20,000.00 from this 'partnership,'" they never compensated her.  Am. Compl. ¶¶ 14-15.  The complaint does not specify when or where these promises were made.

**B.    The PPE Venture**

In or about April 2020, following the start of the Covid-19 pandemic, Eunice told Justina that the defendants would "engage in the process of transforming" a "shell corporation" called JPKJJ into a seller of personal protective equipment, or PPE.  *Id*. ¶¶ 7, 18, 20.[3]  To induce both Justina and Anna to invest, the defendants represented that they had "connections abroad" that would assist with packing the PPE products and delivering them to the tri-state area.  Am. Compl. ¶¶ 20-21; Justina Decl. ¶ 16.  Justina attests that "[t]he agreement between all of us were made [sic] sometime in August 2020 with delivery of products in October 2020."  Justina Decl. ¶ 23.  At the defendants' request, the plaintiffs wired over $800,000 from New York to a California account for Eunice, Joyce and Glenn in a series of transfers.  Am. Compl. ¶ 26; Justina Decl. ¶¶ 22,

---

[3] The Amended Complaint refers to JPKJJ as "operated by the individual defendants," *see id*. ¶ 7, but as belonging to Joyce.  *See id*. ¶ 18 ("[D]efendant Joyce had an existing business, defendant JPKJJ . . . .").

24.[4]  The transfers occurred over "several months in 2020."  Am. Compl. ¶ 23.

The plaintiffs allege that the defendants had no intention of adhering to their representations.  *Id.* ¶ 22.  The PPE supplier had "no capabilities to produce the items that the Plaintiff's [sic] investment had promised."  *Id.* ¶ 29.  Although Joyce, through JPKJJ, leased warehouses in New York and New Jersey, the defendants filled the warehouses with "faulty" PPE products that were of no use in the United States.  *Id.* ¶¶ 30-31.  Moreover, "[i]nstead of investing the funds into the business venture of PPE on behalf of plaintiff as promised by defendants, defendants purloined the funds for their own personal benefit and financial gain."  *Id.* ¶ 24; *see* Justina Decl. ¶ 24.  Justina claims that the defendants transferred money to "their family member and associates in Southeast Asia," and says she "believe[s]" that "investment was indeed flowing

---

[4] Confusingly, the Amended Complaint's introduction states that the suit is being brought by "Plaintiff Justina Kalaj on behalf of herself and Anna Kalaj," and defines that phrase by the singular term "Plaintiff."  Sprinkled throughout the complaint, however, are references to Plaintiff that are clearly singular in nature.  And to add to the confusion, the complaint also deploys the phrase "Plaintiff Justina" from time to time.  *See, e.g.*, Am. Compl. ¶¶ 9, 36.  The Amended Complaint also evidences a decided lack of clarity regarding which plaintiffs assert which claims.

Nevertheless, the Justina Declaration, which I have deemed incorporated into the plaintiffs' pleading, provides allegations pertaining to each plaintiff that are at least sufficient to justify their joinder in this action.  *See* Fed. R. Civ. P. 20(a)(1)(A) (allowing joinder of plaintiffs who, as here, "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences").

back to" the defendants in the United States.  Justina Decl.
¶ 29.  Justina does not say why she believes this.

The plaintiffs filed this suit in August 2021,
alleging breach of contract, conversion, fraud, fraudulent
conveyance, and violation of Section 349 of New York's General
Business Law.  Compl., ECF No. 3.  They amended the Complaint on
November 29, 2021, adding a claim for unjust enrichment.  Am.
Compl.  The Court denied the plaintiffs' requested leave to
amend a second time to add two new plaintiffs.  *See* Mem. &
Order, ECF No. 26.  On February 22, 2022, the defendants filed
the instant motions.  Defs.' Mot. Dismiss, ECF No. 27.[5]  I held
oral argument, Hr'g Tr., ECF No. 38, after which I received
supplemental letter briefs from both parties.  Pls.' Letter, ECF
No. 36; Defs.' Letter, ECF No. 37.

## II.  Legal Standards

Prior to discovery, a plaintiff may defeat a Rule
12(b)(2) motion by "pleading in good faith legally sufficient
allegations of jurisdiction.  At that preliminary stage, the
plaintiff's *prima facie* showing may be established solely by
allegations."  *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902
F.2d 194, 197 (2d Cir. 1990).  The court "construe[s] the
pleadings and affidavits in the light most favorable to

---

[5] The plaintiffs withdrew the fraudulent conveyance claim in their
memorandum in opposition to the motions to dismiss.  Pls.' Mem. 9.

plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the court's task is to assess the legal feasibility of the complaint." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). In doing so, the court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff[s]." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III.  Discussion

**A.   Joyce and Glenn's Motion to Dismiss for Lack of Personal Jurisdiction is Denied**

I consider the defendants' jurisdictional argument first. *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963). Personal jurisdiction over a non-resident

defendant is governed by the law of the forum state, subject to constitutional limitations of due process.  *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998); *see* Fed. R. Civ. P. 4(k). Thus, the inquiry is a "two-part analysis."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).  First, New York State law must provide personal jurisdiction over Joyce and Glenn.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  If it does, the exercise of personal jurisdiction must comport with due process. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014).

While the plaintiffs may establish their *prima facie* showing "solely by allegations," *Ball*, 902 F.2d at 197, "all pertinent documentation submitted by the parties may be considered in deciding the motion."  *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995).  Here, the plaintiffs' allegations, the attestations in Justina's declaration, and the statements in plaintiffs' opposition brief are sufficient to satisfy the requirements of both New York law and due process.

    1.    The Court Has Specific Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)

The complaint states that Joyce and Glenn are subject to specific personal jurisdiction under Section 302(a)(1) and

(a)(3) of New York's Civil Practice Law and Rules.  Am. Compl. ¶¶ 32-33; *see also* Pls.' Mem. 12-13, ECF No. 28.

Pursuant to Section 302(a)(1), a court may exercise personal jurisdiction over an out-of-state defendant who, "in person or through an agent," (1) "transacts any business within the state" or (2) "contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1).  "This subsection thus has two prongs, either of which can form a basis for the exercise of personal jurisdiction over a non-domiciliary."  *Bank Brussels*, 171 F.3d at 786.  To invoke this section, "the claim asserted must arise from [the New York-connected] business activity."  *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing N.Y. C.P.L.R. § 302(a)).  As elaborated further below, Joyce and Glenn transacted business within New York, and the plaintiffs' claims arise from that business activity, so Section 302(a)(1) allows personal jurisdiction.

***Transacted business within the state.***  Joyce and Glenn contend that they did not transact business in New York because (1) the swimwear consultancy arrangement "occurred entirely in California," and (2) they had minimal, if any, involvement in both the swimwear and PPE ventures.  Defs.' Reply Supp. Mot. Dismiss 6-8, ECF No. 29.  However, for purposes of a Rule 12(b) motion to dismiss, the court resolves all factual disputes in

favor of the plaintiffs.  *See Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F. Supp. 433, 435-436 (S.D.N.Y. 1996).   Accepting the complaint's allegations as true, the plaintiffs have sufficiently alleged that Joyce and Glenn transacted business in New York within the meaning of Section 302(a)(1).

A defendant's purposeful creation of a continuing business relationship with a New York party grants New York courts personal jurisdiction.  *See, e.g.*, *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007) (New York courts had jurisdiction over a California company that hired a New York attorney by phone and repeatedly communicated with him for over nine months).  This is true even when a defendant never physically enters the state, because the growth of the national market and technological advances in communication "enable a party to transact enormous volumes of business within a state without physically entering it." *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 850 N.E.2d 1140, 1142-43 (N.Y. 2006).

A defendant's communications with a New York resident suffice to establish personal jurisdiction if the defendant "projected himself" into some transaction with a "center of gravity" inside New York.  *Wilhelmshaven Acquisition Corp. v. Asher*, 810 F. Supp. 108, 112 (S.D.N.Y. 1993) (citing N.Y. C.P.L.R. § 302(a)(1)); *see also Roxx Allison Ltd. v. Jewelers*

*Inc.*, 385 F. Supp. 3d 377 (S.D.N.Y. 2019) (exercising personal jurisdiction where New York was "at least one center of gravity of the transactions at issue"). For example, calling from California into an auction in New York sufficed for personal jurisdiction under the first prong of Section 302(a)(1). *See Parke-Bernet Galleries, Inc. v. Franklyn*, 256 N.E.2d 506, 507-08 (N.Y. 1970). Even where a party "has no offices [in New York], conducted no meetings with the plaintiff here, and its agents purportedly have not visited the State," that party's transaction may have a "center of gravity" in New York. *Caronia v. Am. Reliable Ins. Co.*, 999 F. Supp. 299, 304 (E.D.N.Y. 1998) (insuring New York horse from out of state satisfied Section 302(a)(1)).

The plaintiffs adequately allege that Joyce and Glenn transacted business in New York within the meaning of Section 302(a)(1). Joyce and Glenn's alleged interactions are more substantial than those of the defendant in *Parke-Bernet*, for example, who merely called into a New York auction but was nevertheless subject to personal jurisdiction in New York. *Parke-Bernet*, 256 N.E.2d at 508.

With respect to the swimwear venture, the plaintiffs allege that Joyce and Glenn engaged with Justina regularly in the venture from 2018 through 2019. Justina Decl. ¶ 2. Specifically, the complaint alleges that Justina consulted on

phone calls, emails and text messages while Justina was in New
York, Am. Compl. ¶¶ 11-12, though Justina also worked with Joyce
and Eunice in person at their home and Justina's hotel in
California.  Justina Decl. ¶ 4.  Glenn (with Eunice) "travelled
to New York City and displayed the swim[wear] line at the Conrad
Hotel in Manhattan."  *Id.* ¶ 6.  The swimwear venture therefore
amounted to the transaction of business within New York state
under Section 302(a)(1).

As for the PPE venture, Glenn is alleged to have
reached out to Justina via text, phone and email when starting
the venture, while Joyce rented several warehouses in New York
and paid rent on these warehouses both personally and through
JPKJJ.  Pls.' Mem. 12; Am. Compl. ¶ 30.  The plaintiffs further
state that both Joyce and Glenn knew the PPE products would be
shipped to and sold in New York.  Pls.' Mem. 12; *see Caronia*,
999 F. Supp. at 304 (finding insurance transaction had a "center
of gravity" in New York in part because "the insured was known
by the defendant to be a New Yorker").  Thus, the PPE
transaction, too, had a "center of gravity" in New York.
Accordingly, for both ventures, Justina alleges that Joyce and
Glenn established a prolonged relationship with Justina, a New
York resident, through repeated, purposeful communications, and
thus are subject to personal jurisdiction under the first prong
of Section 302(a)(1).  *See Fischbarg*, 880 N.E.2d at 26.

Because Plaintiffs satisfy the first prong of Section 302(a)(1), I need not discuss the second prong.  *See Bank Brussels*, 171 F.3d at 786.

*"Arising from" the business activity.*  The claims against Joyce and Glenn concern their alleged failure to provide compensation for Justina's services — services rendered, as noted above, in substantial part from New York — and failure to deliver promised profits.  The defendants do not dispute that these claims arise out of Joyce and Glenn's business transactions in New York, *i.e.* that there is "an articulable nexus . . . between the claim[s] asserted and the actions that occurred in New York."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).  Accordingly, the plaintiffs have satisfied Section 302(a)(1).

Because there is personal jurisdiction over Joyce and Glenn pursuant to Section 302(a)(1), "it is unnecessary" to consider the plaintiffs' Section 302(a)(3) argument.  *Gianino v. Panacya, Inc.*, No. 00-CV-584, 2000 WL 1224810, at *7 (S.D.N.Y. Aug. 29, 2000).

2.   The Exercise of Personal Jurisdiction Here Comports with Constitutional Due Process

Due process requires that a defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  To exercise jurisdiction over a defendant that is not "at home" in a forum — *i.e.*, specific, rather than general, jurisdiction — "the defendant must have deliberately "reached out beyond its home" by, for example, "entering a contractual relationship centered" in the forum.  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021). Moreover, the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum."  *Id.*

In addition, the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.  The following factors govern this inquiry:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113-14 (1987)).

Exercise of personal jurisdiction over Joyce and Glenn comports with due process.  While "personal jurisdiction permitted under [New York's] long-arm statute may theoretically

be prohibited under due process analysis," the Second Circuit "would expect such cases to be rare." *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015); *see also D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 78 N.E.3d 1172, 1177 (N.Y. 2017) (same for New York Court of Appeals). With respect to Section 302(a)(1), "[i]t would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant" had a due process right not to be hauled into the New York courts. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013).

Given the extensive contacts discussed above, the plaintiff's allegations of purposeful business activities by out-of-state defendants Joyce and Glenn satisfy the minimum contacts analysis. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 172 (2d Cir. 2010) ("[b]ecause . . . [the defendant] ha[d] purposefully availed himself of the benefits of the New York forum," constitutional test was satisfied).

Moreover, personal jurisdiction here comports with fair play and substantial justice. On the first factor, litigating in New York would not be "so gravely difficult and inconvenient" for Joyce and Glenn that they "unfairly [are] at a

14

severe disadvantage." *Burger King*, 471 U.S. at 478.  Although Joyce and Glenn reside in California, "the conveniences of modern communication and transportation ease" any burden that might impose on them. *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (New York specific jurisdiction over Japanese indemnitor satisfied due process).  On the second and third factors, New York has a "manifest interest in providing effective means of redress for its residents." *Burger King*, 471 U.S. at 483.  On the fourth factor, even if Joyce and Glenn were dismissed, Eunice and JPKJJ would still proceed to trial with evidence and witnesses from California (in Eunice's case, trial regarding both the swimsuit and PPE claims); thus the refusal to exercise jurisdiction here would produce no meaningful efficiency gains.  Finally, the fifth factor "is not a major issue here" because Joyce and Glenn "fail to offer a persuasive social policy that would counsel against exercising jurisdiction in this case." *Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 362 (E.D.N.Y. 2007).  Personal jurisdiction here is thus consistent with due process.

　　　In sum, the plaintiffs have met their burden, at this stage, to establish a *prima facie* case of personal jurisdiction over Joyce and Glenn.  The motion to dismiss for lack of personal jurisdiction is denied.

**B.    The Failure to State a Claim**

The defendants assert that the complaint fails to state a claim for (1) breach of contract, (2) fraud and fraudulent inducement, (3) conversion, (4) violation of General Business Law Section 349, and (5) unjust enrichment. For the reasons set forth below, I dismiss all of the plaintiffs' claims under Rule 12(b)(6).[6]

1.    Anna Kalaj's Swimwear Venture Claims

Although the complaint defines the term "Plaintiff" to include both Justina and Anna, Am. Compl. 1, it contains no plausible allegation that Anna took part in the swimwear venture.  Because "a plaintiff must establish his or her own injuries, a plaintiff seeking redress for alleged injuries inflicted on another person or entity has not established standing."  *Gutterman v. Herzog*, No. 20-CV-1081, 2020 WL 6728787, at *4 (E.D.N.Y. Nov. 16, 2020); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) (to establish constitutional standing, each plaintiff must allege "a distinct and palpable injury to himself").  Anna thus lacks standing, on the existing

---

[6] The plaintiffs' request that I convert the instant motion into one for summary judgment under Rule 56, *see* Pls.' Letter 1, is also denied.  When only one party seeks to convert a motion to dismiss into a motion for summary judgment prior to discovery by offering material outside the pleadings, a court may simply decide the motion to dismiss on the pleadings.  *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 165 (S.D.N.Y. 2006).  Here, the defendants limited their motion to the pleadings and would be "deprived of a reasonable opportunity to contest facts averred outside the pleadings" if the motion were converted.  *Id.*

pleadings, to bring any claims related to the swimwear venture, and I treat all such claims as if they were brought by Justina alone.

    2.   <u>Breach of Contract Claims: Legal Standard</u>

       The plaintiffs assert that the defendants breached two contracts: first, an agreement to pay for Justina's consultations on the swimwear venture, Am. Compl. ¶ 39; and second, an agreement "wherein defendants directed the [p]laintiff[s] to deposit and wire funds as investment" in the PPE venture. *Id.* ¶ 41. However, the plaintiffs do not allege sufficient facts to support a breach of contract claim in either case.

       New York law controls the plaintiffs' contract claims. In a diversity case, federal courts apply the choice of law rules prevailing in the states where they sit. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under New York's rules, the first step is to determine whether there is an actual conflict between the laws invoked by the parties. *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419–420 (2d Cir. 2001). An actual conflict exists when the jurisdictions' substantive rules differ and the differences have a "significant" potential to affect the outcome. *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005). "If no actual conflict exists, and if New York is

among the relevant jurisdictions, the court may simply apply New York law." *Licci*, 672 F.3d at 157. Because there is no actual conflict between New York and California law regarding the elements of breach of contract claims, New York law applies here. *See Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 528 (S.D.N.Y. 2007) (citing *Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001) and *Reichert v. Gen. Ins. Co.*, 442 P.2d 377, 381 (Cal. 1968)).[7]

To state a claim for breach of contract, New York law requires that a plaintiff allege: (1) a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages. *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). To establish the existence of an enforceable agreement, the plaintiffs "must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 213 (S.D.N.Y. 2021) (quoting *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121 (N.Y. App. Div. 1st Dep't 2009)). "The manifestation or expression of assent necessary to form a

---

[7] The defendants suggested such a potential conflict only after oral argument, when they submitted a letter asserting that the statute of limitations for breach of oral contract claims differs between California and New York. *See* Defs.' Letter 6 (citing Cal. Code Civ. Proc. § 339 and N.Y. C.P.L.R. § 213(2)). However, those statutes of limitations are not relevant here, *Fin. One*, 414 F.3d at 331, because the defendants did not raise them in their motion to dismiss, as Rule 8(c) requires, and have never suggested they bar any of the plaintiffs' claims.

contract may be by word, act, or conduct . . . ." *Minelli Const. Co. v. Volmar Const., Inc.*, 82 A.D.3d 720, 721 (N.Y. App. Div. 2d Dep't 2011).

A complaint "fails to sufficiently plead the existence of a contract" if it does not provide "factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms, including under what circumstances Plaintiff could demand payment." *Lim v. Radish Media Inc.*, No. 22-1610, 2023 WL 2440160, at *2 (2d Cir. Mar. 10, 2023) (summary order). "Conclusory allegations that a contract existed or that it was breached do not suffice." *Lamda Sols.*, 574 F. Supp. 3d at 213. Accordingly, a breach of contract claim "that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009).

Likewise, the material terms of the contract must be alleged in non-conclusory fashion. *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 548 N.E.2d 203, 206 (N.Y. 1989) (agreement whose material terms are not reasonably certain is not legally enforceable); 28 Glen Banks, *New York Contract Law* § 2:25, at 81 (2d ed. 2017) (same); *see also Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) ("A breach of contract claim will

be dismissed . . . where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated.").

    3.  <u>Justina's Claim for Breach of the Swimwear Contract</u>

For the swimwear venture, the complaint fails to set forth the material terms required for an enforceable contract under New York law. *See Cobble Hill*, 548 N.E.2d at 206. The complaint never articulates Justina's duties as a consultant or the duration of her consultancy. The complaint even vacillates on the price term — an obviously material term in a consulting arrangement. *Compare* Am. Compl. ¶ 15 ("Eunice and Joyce would repeatedly promise [Justina] that she would receive *approximately* $20,000.00 from this 'partnership.'"), *with id.* ¶ 39 ("Eunice and Joyce agreed that plaintiff was owed *in excess of* $20,000.00 for her work on the consultancy. . . .") (emphases added). And the complaint is silent as to the timing of any such payments.

Moreover, the complaint similarly fails to allege *formation* of any swimwear contract. Justina alleges simply that the defendants "enticed her to act as a consultant to enter into an apparel sale type of partnership" and that she "helped Eunice and Joyce launch the swimsuit line of apparel." *Id*. ¶¶ 8-9. These allegations do not describe an explicit offer or

acceptance with any measure of plausibility.  They likewise fail
to establish an implicit offer or acceptance.  An implied-in-
fact contract requires the plaintiff to allege "specific
interactions between [the parties] that would establish th[e]
specific terms and demonstrate the parties' intent to be bound."
*Soley v. Wasserman*, 823 F. Supp. 2d 221, 230-31 (S.D.N.Y. 2011)
(no implied-in-fact financial advisory contract where parties
did not agree on specific terms of the arrangement, such as
"what kind of interest, if any" the investor would receive or
"when and how often that interest was to be paid").

          For these reasons, Justina has not sufficiently
alleged the terms of the consultancy contract.  A breach of
contract claim "does not meet the *Twombly-Iqbal* standard and
must be dismissed when the Complaint does not specify which
clause of the Agreement Defendant is alleged to have breached."
*Negrete*, 187 F. Supp. 3d at 468.  Even where the parties
"believe they are bound, if the terms of the agreement are so
vague and indefinite that there is . . . no means by which such
terms may be made certain, then there is no enforceable
contract."  *Candid Prods., Inc. v. Int'l Skating Union*, 530 F.
Supp. 1330, 1333-34 (S.D.N.Y. 1982); *see also Eaves v. Designs
for Fin., Inc.*, 785 F. Supp. 2d 229, 258-59 (S.D.N.Y. 2011)
(plaintiffs' failure to "provide facts regarding any specific
contract between the parties, how or when such contract was

formed, or any terms of the contract at issue" was "fatal" to
the claims); *Time, Inc. v. Kastner*, 972 F. Supp. 236, 239
(S.D.N.Y. 1997) (declining to enforce a purported agreement that
omitted to state "material terms" such as the "timing or manner"
of performance).

Moreover, the complaint fails to allege that the
agreement was supported by consideration.  This failure is a
function of the complaint's omission to say anything about the
timing of any offer or acceptance in relation to Justina's
performance.  The general rule in New York is that *past*
consideration is no consideration, because the "the detriment
did not induce the promise."  *Samet v. Binson*, 122 A.D.3d 710,
711 (N.Y. App. Div. 2d Dep't); *see also* Banks, *supra*, § 2:46, at
114.  If the defendants promised to pay $20,000 (or something
like that amount) only after the consultations, the contract
would be unenforceable for lack of consideration.

   4.   <u>Breach of the PPE Contract</u>

Similarly, with respect to the PPE venture, the
factual allegations are inadequate to show an enforceable
contract.  The plaintiffs claim they "entered into an agreement"
pursuant to which the "defendants directed the Plaintiff to
deposit and wire funds as investment into this 'PPE venture.'"
Am. Compl. ¶ 41.  But they say virtually nothing about the form
this investment contract was to take, let alone its key terms.

For example, the plaintiffs do not explain the
allegation that they contracted with the individual defendants
in making this investment, in addition to JPKJJ itself.  And the
complaint vacillates on whether the PPE investment comprised one
contract or several.  *See, e.g.*, *id.* ¶ 26 (alleging that the
"over $800,000" in money transfers "were made in smaller amounts
at the request of the defendants to ensure that the Plaintiff
would believe that she was investing in different
opportunities").

Perhaps even more fundamentally, it is unclear what
kind of investment contract allegedly existed.[8]  Was it a debt
investment or an equity investment?  If the investment was in
the nature of debt — for example a loan — the complaint is
silent about the applicable rate of interest, the timeline for
repayment, and other basic terms.  *See Red Fort Cap., Inc v.
Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 480 (S.D.N.Y. 2019)
(noting that interest rates and maturity dates are material
terms of a loan agreement).  If it was to have been an equity

---

[8] During oral argument, the plaintiffs stated that the alleged
investment was a purchase agreement to buy PPE from the defendants.  Hr'g Tr.
33:21-22.  But the Amended Complaint does not so characterize the PPE
venture, and "the Court must assume the truth of the factual allegations
stated in the Amended Complaint for purposes of this motion; the [plaintiffs]
may not constructively amend those allegations at oral argument."  *United
States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 430 (E.D.N.Y.
2007).  Even if Plaintiffs could, because "a contract for the sale of goods
for the price of $500 or more" is not enforceable unless it is put in
writing, *see* N.Y. U.C.C. § 2-201(1), an oral contract will not suffice.

investment in JPKJJ, the complaint is silent as to what
percentage interest the plaintiffs were purchasing, the number
of shares, the price per share, and the like. *See Benham v.
eCommission Sols., LLC*, 118 A.D.3d 605, 607 (N.Y. App. Div. 1st
Dep't 2014) ("The failure of the parties to agree on the precise
form of the equity stake causes plaintiff's contract claim to
fail for lack of definiteness in the material terms of her
equity compensation."). Likewise, if this was to have been a
partnership agreement or a joint venture, then New York law
requires a provision in the agreement for the sharing of both
profits *and losses* (among other things), and no such provision
is alleged here. *See Cleland v. Thirion*, 268 A.D.2d 842, 843-44
(N.Y. App. Div. 3d Dep't 2000) (partnerships); *Schnur v. Marin*,
285 A.D.2d 639, 640 (N.Y. App. Div. 2d Dep't 2001) (joint
ventures). "Nor are there any reasonable means for filling in
the missing terms; the intent of the parties simply cannot be
ascertained." *Baker v. Robert I. Lappin Charitable Found.*, 415
F. Supp. 2d 473, 480, 483-84 (S.D.N.Y. 2006) (finding no
financing contract absent agreement on terms including "the
nature of the investment (whether loan or equity or otherwise);
the time of performance . . . ; the manner of performance
(whether the funds would be paid in a lump sum or installments);
the terms of repayment (if the monies were to be repaid at all);
whether interest would be paid and if so at what rate; [and]

whether [the parties] would share in profits and if so in what manner and to what extent").

Given these omissions, the complaint does not adequately allege a common understanding as to the nature of the venture or the most basic terms of investment.  At bottom, therefore, the plaintiffs fail to establish the existence of a contract.

5.   <u>Fraud and Fraudulent Inducement</u>

Justina Kalaj brings the complaint's third cause of action — for "fraud and fraud in the inducement" in connection with the PPE venture.  Am. Compl. ¶¶ 58-71.  "[T]he tort of fraud is intended to protect a party from being induced to act or refrain from acting based on false representations . . . ." *Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 493 (N.Y. 2016).  Fraudulent inducement refers, generally speaking, to the subcategory of frauds that occur in the process of persuading another person to enter into an agreement.  *See* 26 Williston on Contracts § 69:3 (4th ed.) ("Fraud in the inducement occurs when the promisor knows what he is signing but his consent is induced by fraud."); *accord Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 606 (N.Y. 1999).

Justina claims that she was fraudulently induced to enter into the PPE venture.  *See* Am. Compl. ¶¶ 58-63 (referring throughout to "Plaintiff," singular, and setting forth

allegations relating solely to the PPE venture).[9]  Parties injured by fraud in the inducement may terminate a contract or, alternatively, seek damages, as Justina does here.  *Goldsmith v. Nat'l Container Corp.*, 40 N.E.2d 242, 244 (N.Y. 1942).

Fraud and fraudulent inducement claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 567 (S.D.N.Y. 2016).  Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "[C]onclusory allegations that defendant's conduct was fraudulent or deceptive are not enough."  *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982).  Rule 9(b) requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).  "Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the

---

[9] *See supra* note 4, regarding the confusion as to which plaintiff alleges which claims in the Amended Complaint.  As noted in this opinion, I deem certain claims to be asserted by Justina alone.  To be clear, however, Anna's assertion of those claims would suffer from the same pleading shortfalls, if she were deemed to be asserting them as well.

particularity requirements of Rule 9(b)." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579-80 (2d Cir. 2005).

Justina's allegations fall well short of satisfying this standard.  For one thing, the complaint exhibits the classic "group pleading" problem.  *See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (allegations that "fail to specify the time, place, *speaker*, and sometimes even the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)." (emphasis added)).  In the paragraphs specifying the Third Cause of Action, Justina asserts that "Defendants Eunice and Glenn agreed with plaintiff that the investment from the Plaintiff would be used for investment in PPE equipment which would be available for sale in the tri-state area for a profit." Am. Compl. ¶ 59 (inconsistent capitalization of "plaintiff" in original).  That section goes on to allege that "Defendants Eunice and Glenn induced plaintiff into giving them and transferring funds at their behest in furtherance of the fraud." *Id.* ¶ 60.  As is apparent, the reader gets no particularity regarding which defendant did the agreeing or inducing in these passages, let alone what statements they made, where or when they made them, or why the statements were fraudulent.

The remainder of the complaint (even with the Justina Declaration appended) does not meaningfully fill these gaps.  In the four-page "Factual Background" section preceding the

individual causes of action, the complaint alleges that the
"Defendants" — again plural — stated that "they had connections
abroad that would facilitate" the investment and falsely assured
Justina that "the investment was progressing properly" with a
qualified supplier.  Am. Compl. ¶¶ 20-21, 28-29.  These
allegations, too, fail to "specify . . . the speaker."  *Luce*,
802 F.2d at 54; s*ee Mills*, 12 F.3d at 1175 ("Rule 9(b) is not
satisfied where the complaint vaguely attributes the alleged
fraudulent statements to 'defendants'" without specifying which
of three defendants).  Moreover, even assuming Justina could
attribute the same statement to multiple speakers, *e.g.* Justina
Decl. ¶ 17 ("Eunice and Glenn informed me that they had a
relative in southeast Asia who would assist with the" PPE
venture), she still fails to allege "why" what the speakers said
was false.  *See Mills*, 12 F.3d at 1175.  These failures require
dismissal.

Setting aside the Rule 9(b) issues, the fraudulent
inducement claim is insufficient even under Rule 8.  The
strongest fraud allegation the plaintiffs have mustered is that
the defendants "had no intentions of adhering to the promises"
they made — that they solicited the funds for their "personal
benefit and financial gain."  Am. Compl. ¶¶ 22, 24-25.  Yet the
complaint acknowledges that the defendants actually "leased
warehouse spaces in New York and New Jersey" to store PPE, *see*

*id.* ¶ 30, and actually "filled these warehouses with PPE," *id.* ¶ 31, even if that equipment was "faulty." *Id.*; *see also id.* ¶ 48 (alleging that the defendants breached the PPE contract when they "*delivered* shoddy product" (emphasis added)); *id.* ¶ 56 (alleging the defendants "*delivered* defective products" (emphasis added)). These allegations of actual steps taken to conduct the PPE venture bely the theory that "none of the individual defendants intended to follow through on the 'PPE venture.'" *Id.* ¶ 62. The plaintiffs' own allegations — to the extent they provide any meaningful factual content at all — more plausibly suggest that the failure to deliver profits was the result of operational ineptitude rather than fraud. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) ("allegations of fraud [that] are internally self-contradictory" "support defendants' motions to dismiss.").

The plaintiffs do posit — albeit in conclusory fashion — that the defendants rented warehouse space "simply" as "a ruse" to facilitate the fraud. Am. Compl. ¶ 62; *see also id.* ¶ 30. But "given [the] more likely explanations" appearing on the face of the complaint — that the defendants were attempting to run a PPE venture, albeit unsuccessfully or even incompetently — "they do not plausibly establish this purpose." *Iqbal*, 556 U.S. at 681. For obvious reasons, the mere fact of a business failure does not suffice to establish fraud. *See*

*Diesenhouse v. Soc. Learning & Payments, Inc.*, No. 20-CV-743, 2022 WL 3100562, at *1, 8 (S.D.N.Y. Aug. 3, 2022) (statements that investors would materialize were not fraudulent under New York law simply because, in "hindsight," investors never materialized); *cf. Cox v. Blackberry Ltd.*, 660 F. App'x 23, 25 (2d Cir. 2016) ("[P]laintiffs' theory . . . is that because the release of the [product] ultimately turned out to be a failure, defendants must have known that it would be a failure and lied about this fact to investors.  [That is] fraud by hindsight" . . . .).  And the complaint simply contains no other factual content consistent with fraud, apart from the bare assertion that the defendants never intended to succeed.  Under *Twombly* and *Iqbal*, therefore, the complaint does not adequately allege fraud.[10]

  6. <u>Conversion</u>

    Justina Kalaj also asserts a cause of action for conversion.  She levies this claim against "all individual defendants."  *See* Am Compl. ¶¶ 51-57.  She contends that "[a]ll individual defendants were to deliver equipment to Plaintiff in

---

[10] The defendants' alleged statements that "the investment was progressing properly . . . and·the Plaintiff together with the defendants would benefit from the investment," Am. Compl. ¶ 28, are "mere puffery, opinions of value or future expectations" and not actionable as fraud.  *Kato Int'l LLC v. Gerard Fox L., P.C.* 195 A.D.3d 516, 516-17 (N.Y. App. Div. 1st Dep't) (alleged misrepresentations that rent in a lease was "below market rate" and that the "premises could be sublet easily" did not support a fraud claim), *leave to appeal dismissed*, 178 N.E.3d 933 (N.Y. 2021).

New York for the 'PPE venture' but instead delivered defective products that were rejected by potential buyers and defendants all kept the money." *Id.* ¶ 56.  As in her fraudulent inducement claim, Justina is contending that the defendants presented an investment opportunity but then simply pocketed her capital.

The defendants thus argue that the conversion claim, too, "sound[s] in fraud" and must satisfy Rule 9(b).  Defs.' Mem. Supp. Mot. Dismiss 10, ECF 27-1.  Whether a claim "sounds in fraud necessarily requires a case-by-case analysis." *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 442 (S.D.N.Y. 2015).  "Generally, a non-fraud claim will sound in fraud if [1] the claim arose out of events that the pleading describes in terms of fraud or the pleading includes a claim based on fraud, and [2] the non-fraud claim incorporates the fraud allegations." *Id.*

The plaintiffs' conversion claim "rests on an allegation of fraudulent taking" through the PPE venture "and is therefore subject to the pleading requirements of Rule 9(b)." *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998). The plaintiffs premise their conversion claim on an intentional misrepresentation.  *See* Am. Compl. ¶ 54 (the defendants, "while knowing no legitimate investments would be made," "knowingly and intentionally" demanded that the plaintiffs transfer money). Thus, "the Plaintiffs brand the Defendants as liars, not

thieves" — even if they do so without adequate factual content in support — and Rule 9(b) applies.  *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 352 (E.D.N.Y. 2014).

The conversion claim fails the Rule 9(b) particularity requirement.  As discussed above, the plaintiffs' allegations fall well short of identifying the roles of each participant in the fraudulent scheme and providing necessary factual content about the fraudulent acts.  Accordingly, the claim for conversion is dismissed for failure to satisfy Rule 9(b) and Rule 8.  *See supra* Section III.B.5; *see also Daly*, 30 F. Supp. 2d at 414 (dismissing conversion claim sounding in fraud under Rule 9(b)).

7.  Violation of General Business Law Section 349

The plaintiffs also argue that the defendants violated Section 349 of New York's General Business Law by misrepresenting the character of the PPE investment.  To state a claim under Section 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).  The critical question is whether "the acts or practices have a broad impact on consumers at large."  *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 535 (E.D.N.Y. 2015).

The plaintiffs have not alleged that the defendants directed any conduct at consumers at large.  Instead, they argue that "the agreement between plaintiff and the defendants was consumer oriented because defendants were to supply PPE equipment to the public at large."  Pls. Mem. 11.  But Justina is not alleging that the public at large was deceived; instead, the deceptive business practices at issue were purely private in nature.  The consumer-oriented element precludes a claim based on "private contract disputes, unique to the parties." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 171 N.E.3d 1192, 1198 (N.Y. 2021); *see also Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 143 (2d Cir. 2014).  As a result, the Section 349 claim must also be dismissed.

## 8.   Unjust Enrichment: Legal Standard

The plaintiffs additionally bring unjust enrichment claims based on both ventures.  Am. Compl. ¶¶ 80-84.  Under New York law, to prevail on a claim of unjust enrichment, "a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *Citibank, N.A. v. Walker*, 12 A.D.3d 480, 481 (N.Y. App. Div. 2d Dep't 2004), *abrogated on other grounds by Butler v. Catinella*, 58 A.D.3d 145 (N.Y. App. Div. 2d Dep't

2008).  Recovery for unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).  One such unusual situation is when a plaintiff can establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).  As with fraud and conversion claims, when an unjust enrichment claim "sounds in fraud," it must "satisfy th[e] heightened pleading standard" of Rule 9(b). *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023).

9.   Unjust Enrichment: PPE Venture

With respect to the PPE venture, the unjust enrichment claim sounds in fraud.  It is premised on the same factual allegations as those supporting the plaintiffs' fraud and conversion claims.  The plaintiffs offer no additional facts or arguments to distinguish their unjust enrichment claim from these claims beyond the conclusory statements that the defendants "w[ere] unjustly enriched," Am. Compl. ¶ 89, and

"retained the fruits of" the plaintiffs' money transfers.  *Id.*
¶ 87.  Thus, like the plaintiffs' fraud and conversion claims,
their unjust enrichment claim regarding the PPE venture must
satisfy Rule 9(b) — and, for the same reasons as those other
claims, the unjust enrichment claim does not.  That alone is
grounds to dismiss the unjust enrichment claim.

Even putting the Rule 9(b) issues aside, the PPE
venture unjust enrichment claim is too conclusory to survive a
motion to dismiss.  To state an unjust enrichment claim under
New York law, the plaintiffs must allege "*how* [the defendants]
benefitted from the money" at the "[p]laintiffs' expense."
*Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 784
(S.D.N.Y. 2011) (emphasis added).  Allegations that defendants
simply "used the money in a variety of unauthorized ways" are
"too vague and conclusory to constitute . . . proper
allegation[s] that [the defendants] themselves received a
benefit" at the plaintiffs' expense.  *Id.*

Here, the complaint alleges that "Defendants engaged
in [a] sophisticated series of money/wire transfers from the
United States of America into other accounts across the world,
which money then flowed back for the personal benefit and
financial gain for the defendants."  Am. Compl. ¶ 25. There is
no nonconclusory allegation permitting the inference that
whatever money "flowed back" to the defendants actually

"personally benefited" them.  Meanwhile, there are countervailing allegations suggesting that this money was spent "leas[ing] warehouse spaces" and "fill[ing] th[o]se warehouses with PPE."  *Id.* ¶¶ 30-31.  Again, "given more likely explanations," the conclusion that the defendants benefited at the plaintiffs' expense is not plausibly established.  *Iqbal*, 556 U.S. at 681.  The PPE venture unjust enrichment claim thus fails not only to plead with particularity under Rule 9(b), but also to state a claim, and it is dismissed on both bases.  *See Amusement Indus.*, 786 F. Supp. 2d at 778, 782, 784 (dismissing unjust enrichment claim for failure to state a claim despite finding parallel fraud claim satisfied Rule 9(b)).

    10.  Unjust Enrichment: Swimwear Venture

        In contrast, with respect to the swimwear venture, Justina may have a cognizable unjust enrichment claim for the value of her services, as she allegedly performed them without pay.  Am. Compl. ¶¶ 86, 88.  Nevertheless, I need not decide whether Justina properly stated such a claim, as she has failed to allege that this claim is for more than $75,000, the minimum amount in controversy for a diversity claim.  28 U.S.C. § 1332(a); *see* Am. Compl. ¶ 15 (alleging approximately $20,000 as expected payment for Justina's consulting services).  All other claims in this diversity action are being dismissed, and Justina's swimwear venture unjust enrichment claim cannot

sustain subject matter jurisdiction on its own.  *See Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 809-10 (S.D.N.Y. 2012) (dismissing New York unjust enrichment claim where "absent the contract claim" being dismissed for failure to state a claim, the "action as pled" could not "satisfy the amount-in-controversy requirement").  The unjust enrichment claim is therefore also dismissed with respect to the swimwear venture.

**C.   All Claims Except for the Swimwear Venture Unjust Enrichment Claim are Dismissed with Prejudice**

The defendants contend that the complaint should be dismissed with prejudice.  With one exception, I agree.

Generally speaking, courts in this circuit are hesitant to dismiss claims with prejudice based on pleading deficiencies absent "undue delay, bad faith, dilatory motive, [or] futility."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("[T]he permissive standard" for granting leave to amend "is consistent with our strong preference for resolving disputes on the merits.").  But a court may dismiss with prejudice after "repeated failure to cure deficiencies by amendments previously allowed."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, in advance of a November 3, 2021 premotion conference, the defendants submitted a letter identifying defects in each of the original Complaint's claims.  *See* Defs.'

Letter Req'ing Pre-Mot. Conf. 1–2, ECF No. 11.  At the premotion

conference, the defendants (and, to some extent, the Court) laid

out the defects at issue here (except regarding the plaintiffs'

unjust enrichment claim, which first appeared in the Amended

Complaint).  *See* Hr'g Tr., ECF No. 39.  The plaintiffs conceded

Rule 9(b)'s standard is applicable.  *Id.* at 9:20–21.  The Court

"not only gave plaintiffs' counsel the opportunity to correct

its defective pleading, but also offered significant guidance on

how to do so."  *Adler v. Berg Harmon Assocs.*, 816 F. Supp. 919,

925 (S.D.N.Y. 1993) (dismissing claim with prejudice).

Moreover, after the defendants moved to dismiss and

filed their initial memorandum of law, the plaintiffs proffered

the Justina Declaration and "respectfully request[ed]" that it

"be made part of the [Amended Complaint]."  Pls.' Mem. 1 n.2.

Then, with the benefit of full briefing of the motion to dismiss

and oral argument, the plaintiffs asked that the Justina

Declaration be incorporated "as part of a Second Amended

Complaint."  Pls.' Letter 1.  The plaintiffs' post-oral argument

letter proposed no further amendments besides incorporation of

the Justina Declaration.

I have now granted plaintiffs precisely the amendment

they requested, and their pleading remains deficient.  The

plaintiffs are not entitled to amend yet again after receiving

"an opportunity to amend in response to full briefing of the

defendants' motion to dismiss, and fail[ing] . . . to explain how [they] propose[] to amend the complaint to cure its defects." *F5 Cap. v. Pappas*, 856 F.3d 61, 90 (2d Cir. 2017); *see also Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022) (affirming dismissal with prejudice based on pleading deficiencies "[a]bsent any indication as to what [the plaintiff] might add to his complaint in order to make the[] claims viable").  Accordingly, the breach of contract, conversion, fraud and fraudulent inducement, and Section 349 claims are dismissed with prejudice.

The plaintiffs' PPE venture unjust enrichment claim, which first appeared in the Amended Complaint, is also dismissed with prejudice.  The defects in that claim are precisely the same defects that the plaintiffs failed to cure in their fraud and fraudulent inducement and conversion claims – lack of particularity about the alleged PPE fraud, plus implausible allegations that the defendants stole, rather than lost, the plaintiffs' money.

However, as the swimsuit venture unjust enrichment claim is dismissed for want of subject matter jurisdiction, that claim alone is dismissed without prejudice.  *See Green v. Dep't of Educ. of N.Y.*, 16 F.4th 1070, 1074 (2d Cir. 2021) ("[D]ismissals for lack of subject matter jurisdiction must be without prejudice, rather than with prejudice.").

**IV.   Conclusion**

For the reasons set forth above, the motion to dismiss for lack of personal jurisdiction is denied, and the motion to dismiss for failure to state a claim is granted.  The Amended Complaint is dismissed in its entirety.  The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.


  /s/ Eric Komitee
ERIC KOMITEE
United States District Judge


Dated:    July 17, 2023
          Brooklyn, New York